## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PAMELA B. NEELEY,                          )
                                           )
       Plaintiff,               )
                                           )
     v.                            )  C. A. No. 16-00180-MAK-SRF
                                           )
NANCY A. BERRYHILL,                        )
Acting Commissioner of Social Security,[1] )
                                           )
       Defendant.               )

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

Plaintiff Pamela B. Neeley ("Neeley") filed this action on March 22, 2016 against the

defendant Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration

(the "Commissioner"). Neeley seeks judicial review pursuant to 42 U.S.C. § 405(g) of the

Commissioner's October 10, 2014 final decision, denying Neeley's claim for disability insurance

benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434 and

§§ 1381–1383f. The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Currently before the court are cross-motions for summary judgment filed by Neeley and

the Commissioner. (D.I. 12; D.I. 14) Neeley asks the court to enter an award of benefits or,

alternatively, to remand her case for further administrative proceedings. (D.I. 13) The

Commissioner requests the court affirm the ALJ's decision. (D.I. 15 at 16) For the reasons set

forth below, the court recommends granting-in-part and denying-in-part Neeley's motion for

summary judgment (D.I. 12), and granting-in-part and denying-in-part the Commissioner's

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal
Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for former Commissioner
Carolyn W. Colvin.

cross-motion for summary judgment (D.I. 14). Additionally, it is recommended that the court deny Neeley's demand for an award of benefits. The court also recommends that the case be remanded for further administrative proceedings as outlined *infra*.

## II.    BACKGROUND

### A.    Procedural History

Neeley filed a DIB application on March 7, 2007, claiming a disability onset date of January 1, 2005. (Tr. at 89) Her claim was initially denied on June 20, 2007, and denied again after reconsideration on November 14, 2007. (*Id.* at 60, 70) Neeley then filed a request for a hearing, which occurred on October 7, 2008. (*Id.* at 82) Administrative Law Judge, Edward J. Banas, issued an unfavorable decision, finding that Neeley was not disabled under the Act. (*Id.* at 16–25) The Appeals Council subsequently denied Neeley's request for review on March 6, 2010, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 432–436) On May 3, 2010, Neeley brought a civil action in this court challenging the ALJ's decision. (D.I. 15 at 2) The Commissioner filed an unopposed motion for voluntary remand. (Tr. at 352) As such, the case was remanded on January 24, 2011 for further administrative proceedings. (Tr. at 350– 352) On May 31, 2011, the Appeals Council again issued an unfavorable decision, finding that Neeley was not disabled under the Act. (*Id.* at 345)

Neeley again brought a civil action in this court, and on March 15, 2012, it was remanded for further proceedings. (*Id.* at 421) On December 31, 2013, the Appeals Council assigned the case to Administrative Law Judge, Jeffery M. Jordan (the "ALJ"), for another hearing. (*Id.* at 425) The hearing was held on August 14, 2014. (*Id.* at 393–414) On October 10, 2014, the ALJ issued an unfavorable decision finding that Neeley was not disabled under the Act. (*Id.* at 371) The Appeals Council subsequently affirmed the ALJ's decision, rendering it the final decision of

the Commissioner. (*Id.* at 360) On March 22, 2016, Neeley brought a civil action in this court

challenging the ALJ's decision. (D.I. 2) On October 26, 2016, Neeley filed a motion for

summary judgment, and on November 23, 2016, the Commissioner filed a cross-motion for

summary judgment. (D.I. 12; D.I. 14)

### B.  Medical History

The ALJ concluded that Neeley has the following severe impairments: disorders of the

back, including degenerative disc disease; residual effects of status post left rotator cuff repair;

gastrointestinal disorder; anxiety; and depression. (Tr. at 377) The court notes that Neeley's

medical history is not in dispute.

### C.  Vocational expert testimony before ALJ Jordan

The ALJ posed the following hypothetical to the vocational expert ("VE"):

> Please assume a hypothetical individual [sic] the claimant's age, education and
> work background. Assume further this individual is going to lift, carry, push, pull
> up to ten pounds occasionally, from waist to chest level, and stand and walk about
> two to four hours with an eight-hour work day and sit six hours with an eight-hour
> work day. Can stand/walk no longer than ten to fifteen minutes at a time before
> having to sit. Would need to use an assistive device to aid in walking. Individual
> could sit up to about thirty minutes before having to stand for a few minutes. This
> individual has to avoid climbing ladders, ropes and scaffolds, crawling, perform
> other postural movements occasionally. Individual is limited to simple, routine,
> repetitive tasks with occasional brief superficial interaction with the public and
> co-workers. Avoid constant fingering, grasping, handling and reaching bilaterally
> and avoid overhead work activity with the left upper extremity. Avoid working
> around hazards such as moving dangerous machinery and unprotected heights.
> Work environment should have close proximity to a restroom such an [sic] office
> setting on the same floor. Could such an individual perform the claimant's past
> work?

(*Id.* at 409–410) The VE testified that at the limited sedentary level, the individual described

would be able to work in occupations including addressing clerk, call out operator, and

surveillance system monitor. (*Id.* at 410–411) The VE explained that Neeley's prior work

experience as a jewelry packer, and housekeeper at the race track, would apply as past relevant

work experience. (*Id.* at 411) However, the VE testified that Neeley could not return to either of those positions, because of the level of exertion required. (*Id.* at 409)

In a second hypothetical, the ALJ posed the following to the VE: "If the individual was limited to no more than occasional fingering, grasping, handling and reaching with the left upper extremity in addition to the other limitations, could the individual still perform the cited jobs?" (*Id.* at 411–12) The VE testified that only the surveillance system monitor position is compatible with the hypothetical. (*Id.* at 412)

On cross examination, Neeley's attorney asked whether the position of call out operator would be appropriate for a hypothetical individual who is limited to "brief interactions with co-workers, supervisor, and the general public." (*Id.*) The VE stated the position of call out operator would be appropriate, because the job description is someone "who basically compiles credit information and then telephones subscribers. So it is not an individual that deals directly with the public." (*Id.*) The VE further clarified that the job is done primarily in isolation, co-workers would be present, but direct interaction would not be required. (*Id.*)

Neeley's attorney also asked if a person who needs to take a break and be off task for ten minutes, every thirty minutes, would be able to sustain full-time work. (*Id.* at 413) The VE stated that such a person would not be able to sustain any type of full-time work. (*Id.*)

### D.     The ALJ's findings

Based on the factual evidence in the record and the testimony of Neeley and the VE, the ALJ determined that Neeley was not disabled under the Act for the relevant time period from January 1, 2005 through March 31, 2006, the date last insured. (Tr. at 374–387) The ALJ found, in pertinent part:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2006.

4

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2005, through her date last insured (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: disorders of the back, including degenerative disc disease (DDD); residual effects of status post left rotator cuff repair; gastrointestinal disorder; anxiety; and depression (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant had the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a), except for the following: the claimant could lift, carry, push, and pull up to ten pounds occasionally from waist to chest level; the claimant could stand/walk for two to four hours and sit for six hours in an eight-hour workday, but she needed to walk with the aid of an assistive device and stand/walk for no longer than ten minutes at a time before sitting, and sit for no longer than thirty minutes before needing to stand/walk for a few minutes; the claimant had to avoid crawling and climbing ladders, ropes, and scaffolds, but she could stoop on an occasional basis; the claimant was limited to simple, routine, and repetitive tasks, with occasional, brief, and superficial interaction with the public and coworkers; the claimant had to avoid constant fingering, grasping, handling, and reaching; the claimant had to avoid overhead work activity with her left upper extremity; the claimant had to avoid working around hazards, such as moving dangerous machinery and unprotected heights; and the claimant's work environment should have had close proximity to a restroom, such as in an office setting on the same floor.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born December 15, 1960, and the claimant was forty-five years old, which is defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education, and the claimant is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2005, the alleged onset date through the date last insured (20 CFR 404.1520(g)).

(Tr. at 374–387)

## III.    STANDARD OF REVIEW

Findings of fact made by the ALJ, as adopted by the Appeals Council, are conclusive if they are supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (2015). Judicial review of the ALJ's decision is limited to determining whether "substantial evidence" supports the decision. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the ALJ's decision and may not re-weigh the evidence of record. *See id.* In other words, even if the reviewing court would have decided the case differently, the court must affirm the ALJ's decision if it is supported by substantial evidence. *See id.* at 1190–91.

Substantial evidence is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (quoting *Jesurum v. Sec'y of the United States Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995)). As the United States Supreme Court has explained, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

6

(1988). The Supreme Court also has embraced this standard as the appropriate standard for determining the availability of summary judgment pursuant to Federal Rule of Civil Procedure 56. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If "reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *See id.* at 250–51 (internal citations omitted). Thus, in the context of judicial review under § 405(g):

> [a] single piece of evidence will not satisfy the substantiality test if [the ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.

*Brewster v. Heckler*, 786 F.2d 581, 584 (3d Cir. 1986) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Where, for example, the countervailing evidence consists primarily of a claimant's subjective complaints of disabling pain, the ALJ "must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." *Matullo v. Bowen*, 826 F.2d 240, 245 (3d Cir. 1990).

"Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)). "A

district court, after reviewing the decision of the [Commissioner] may, under 42 U.S.C. § 405(g) affirm, modify, or reverse the [Commissioner]'s decision with or without remand to the [Commissioner] for rehearing." *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

## IV. DISCUSSION

### A. Disability Determination Process

The core issue in this case is whether Neeley was disabled within the meaning of the Act at any point during the alleged disability onset date, January 1, 2006, through the date last insured, March 31, 2006. (Tr. at 374–387) Title II of the SSA affords insurance benefits "to persons who have contributed to the program and who suffer from a physical or mental disability." 42 U.S.C. § 423(a)(1)(D) (2015); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is only disabled if his impairments are so severe that he is unable to do his previous work or engage in any other kind of substantial gainful work existing in the national economy. *Id.* § 423(d)(2)(A); *Barnhart v. Thomas,* 540 U.S. 20, 21–22 (2003). To qualify for disability insurance benefits, a claimant must establish that he was disabled prior to the date he was last insured. 20 C.F.R. § 404.131 (2016); *Matullo v. Bowen*, 826 F.2d 240, 244 (3d Cir. 1990).

The Commissioner must perform a five-step analysis to determine whether a person is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427–28 (3d Cir. 1999). If the Commissioner makes a finding of disability or non-disability at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. §§

8

404.1520(a)(4), 416.920(a)(4)(i). At step one, the Commissioner determines whether the claimant is engaged in any substantial gainful activity. *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (mandating finding of non-disability when claimant's impairments are not severe). If the claimant's impairments are severe, at step three, the Commissioner compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches a listed impairment, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to step four and five. *See id.* §§ 404.1520(e), 416.920(e).

At step four, the ALJ considers whether the claimant retains the residual functional capacity (the "RFC") to perform his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating claimant is not disabled if able to return to past relevant work); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001). The claimant bears the burden of demonstrating the inability to return to past relevant work. *See Plummer*, 186 F.3d at 428.

If the claimant is unable to return to past relevant work, at step five, the Commissioner must demonstrate that the claimant's impairments do not preclude him from adjusting to any

other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of non-disability when claimant can adjust to other work); *Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* The ALJ often seeks the VE's assistance in making this finding. *See id.*

**B.     Whether the ALJ's Decision is Supported by Substantial Evidence**

Pursuant to the express terms of the remand order, the Appeals Counsel directed the ALJ, before relying on the vocational expert evidence, to "identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the *Dictionary of Occupational Titles (DOT)* and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p)." (Tr. at 374–375)

On October 10, 2014, the ALJ found Neeley was not disabled within the meaning of the Act from the alleged onset date of January 1, 2005, through March 31, 2006, the date last insured. (Tr. at 374–387) The ALJ concluded that, despite Neeley's severe impairments (disorders of the back, including degenerative disc disease (DDD); residual effects of status post left rotator cuff repair; gastrointestinal disorder; anxiety; and depression), she had the residual functional capacity to perform limited sedentary work. (*Id.* at 377) The ALJ concluded that Neeley could perform "simple, routine, and repetitive tasks, with occasional, brief, and superficial interaction with the public and co-workers." (Tr. at 380) A limitation of "simple, routine, and repetitive tasks" correlates to a level 1 reasoning standard. <u>DOT</u>, Appendix C -

Components Of The Definition Trailer, 1991 WL 688702 ("Apply commonsense understanding to carry out simple one or two-step instructions."). The ALJ further concluded that Neeley should "avoid constant fingering, grasping, handling and reaching," and "avoid overhead work activity with the left upper extremity." (Tr. at 380) After considering the VE's testimony, the ALJ found that Neeley could not return to her past relevant work as an employee at a day care center, housekeeper, or jewelry packer. (*Id.* at 385) However, the VE testified that Neeley could work as a call out operator, surveillance system monitor, and as an addressing clerk. (*Id.* at 386)

## 1. Conflict between VE testimony and Dictionary of Occupational Titles (DOT)

At Step Five, the Commissioner has the burden of determining whether the claimant is capable of performing "other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In determining what type of work the claimant is capable of performing, the Commissioner relies on the DOT, the testimony of the VE, and the SSA's regulations and policies. *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014).

"The DOT is a vocational dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job." *McHerrin v. Astrue*, 2010 WL 3516433, at *3 (E.D. Pa. Aug. 31, 2010). For each job, the DOT lists the job's General Educational Development ("GED") level, Strength level, and Specific Vocational Preparation ("SVP") level. *Appendix C*, Dictionary of Occupational Titles.

The GED measures the "aspects of education (formal or informal) which are required of the worker for satisfactory job performance." *Id.* The GED is broken down into three categories: 1) reasoning development, 2) mathematical development, and 3) language development. *Id.* Reasoning levels in the DOT are assigned a number between 1 (lowest) and 6 (highest). *Id.* Pertinent to this case, a reasoning level of 1 requires the claimant to "[a]pply

11

commonsense understanding to carry out simple one-or-two step instructions [and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* Whereas, a reasoning level of 3 requires the claimant to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." *Id.* SSA Policy Memo 09-2139 states, the ALJ should consider whether the reasoning level of an occupation conflicts with the claimant's RFC, "for example an occupation with a…reasoning level of 3 or higher for a claimant who is limited to performing simple, routine or unskilled tasks." SSA Policy Memo 09-2139.

The Strength level "reflects the estimated overall strength requirement of the job." *Appendix C*, Dictionary of Occupational Titles. SVP levels measure the skill required to perform a specific job. SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). "A skill is knowledge of a work activity that requires the exercise of significant judgment that goes beyond the carrying out of simple duties." *Id.* SVP levels are assigned a number between 1 (lowest) and 9 (highest). *Id.* The numbers correlate to three categories that are defined in the CFR: unskilled, semi-skilled, and skilled. 20 C.F.R. § 404.1568(a)-(c). Unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT. SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

The Commissioner may also rely on the testimony of the VE to meet its evidentiary burden at Step Five. 20 C.F.R. § 404.1566(e). The purpose of the VE testimony is to provide the ALJ with occupational evidence on what jobs the claimant can perform. SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). A common issue, which is argued by Neeley on appeal, occurs when the VE's testimony conflicts with the information in the DOT. SSR 00-4p states

12

that "occupational evidence provided by the VE or VS generally should be consistent with the occupational information supplied by the DOT. *Id.* at *2. However, "[w]hen there is an apparent unresolved conflict between the VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." *Id.* Specifically, the ALJ must (1) "ask, on the record, whether the VE's testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.'" *Zirnsak*, 777 F.3d at 617 (citing *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002). A remand may be required if an ALJ fails to comply with these requirements. *Zirnsak*, 777 F.3d at 617. However, the Third Circuit has emphasized that the "presence of inconsistencies does not *mandate* remand, so long as 'substantial evidence exists in other portions of the record that can form an appropriate basis to support the result.'" *Id.* (citing *Boone v. Barnhart*, 353 F.3d 203, 209 (3d Cir. 2004).

Neeley argues the ALJ did not resolve conflicts between the VE's testimony and the information in the DOT. (D.I. 13 at 5–10). Specifically, Neeley asserts the ALJ violated SSR 00-4p, because the ALJ did not elicit any evidence, nor resolve the conflict, between the VE's testimony and the information in the DOT, as to reasoning level, reaching, and interacting with others, for the jobs of addressing clerk (approximately 78,000 jobs in the national economy), call out operator (approximately 50,000 jobs in the national economy), and surveillance system monitor (approximately 20,000 jobs in the national economy). (D.I. 13 at 6–9)

For the following reasons, it is recommended that the court deny Neeley's demand for an award of benefits and remand, in part, to address the inconsistencies.

### A. Surveillance System Monitor

#### a. Reasoning Level Conflict

Neeley argues her limitation to "simple, routine, and repetitive tasks" prevents her from performing the occupation of surveillance system monitor. (D.I. 13 at 8) A surveillance system monitor is classified by the DOT as unskilled with level three reasoning. DOT 209.587-010. SSA policy states the "regulatory definitions of skill levels are controlling." SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). However, a "bright-line rule" does not exist as to whether there is a "*per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work." *Zirnsak*, 777 F.3d at 618.

In the instant matter the ALJ asked: "Is your testimony consistent with the information contained in the Dictionary of Occupational Titles?" (Tr. at 411) In response, the VE addressed conflicts regarding the sit/stand option[2], but did not address any reasoning level conflicts. (*Id.* at 411–413) The ALJ did not inquire further when the VE did not resolve the conflict. (Tr. at 411) As such, the ALJ did not obtain "a reasonable explanation," nor resolve the conflict, between the information in the DOT and the VE's testimony concerning the reasoning level required for a surveillance system monitor position. SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

In response, the Commissioner relies on *Zirnsak v. Colvin*, in arguing the ALJ properly relied on the VE's testimony, and that no conflict exists. (D.I. 15 at 11–15) The Commissioner highlights that the ALJ asked the VE whether her testimony was consistent with the information in the DOT, and in response, the VE did not discuss any conflicts regarding reasoning level. (*Id.*

---

[2] Neeley acknowledges that the ALJ directly addressed and resolved all conflicts between the VE's testimony and the information in the DOT regarding the sit/stand option. (D.I. 13 at 5) Neeley argues the ALJ should have done the same analysis for reasoning level, reaching, and social interaction with others. (D.I. 13)

at 9–10) The Commissioner argues this exchange meets the ALJ's obligations under SSR 00-4p. (*Id.* at 9–15) However, the present case is different than *Zirnsak* in two ways. First, this case was remanded for the purpose of addressing any conflicts between the VE's testimony and the information in the DOT. (Tr. at 375) Second, the claimant in *Zirnsak* did not rely on SSA Policy Memo 09-2139, which states adjudicators should consider GED ratings that conflict with a claimant's RFC. SSA Policy Memo 09-2139.

*Zirnsak* reasoned that courts probing whether to remand when a reasoning level 3 job is proffered by the VE for a claimant limited to simple, routine tasks or unskilled work, focus on whether the ALJ's failure to inquire or reconcile the conflict may be considered harmless error. 777 F.3d at 618. Factors influencing a finding of harmless error include the claimant's failure to argue that she could not perform the necessary skills, whether the conflict is so obvious that the ALJ should have noted it even if the claimant does not raise it, and whether the jobs listed by the VE were only representative examples as opposed to an exhaustive list of jobs the claimant was capable of performing. *See id.*

Here, the Commissioner acknowledges that it is unknown whether the jobs listed by the VE are only representative examples as opposed to an exhaustive list. (D.I. 15 at 12, n.3) Therefore, any failure of the ALJ to inquire or reconcile the conflict cannot support a recommendation for a finding of "harmless error." This is especially so when the ALJ was expressly tasked with making such inquiry. On remand, the ALJ is directed to inquire whether the reasoning level 3 jobs listed by the VE are representative examples or an exhaustive list.

In view of the foregoing, unresolved conflicts remain between Neeley's RFC limitations for "simple, routine, and repetitive tasks," and the level 3 reasoning requirements of a surveillance system monitor. Therefore, remand is recommended.

15

### b.  Reaching Conflict

Neeley does not argue there is a conflict regarding the reaching requirements of the surveillance system monitor position. (D.I. 13 at 9)

### c.  Interacting with Others Conflict

Neeley argues her limitation to "occasional brief superficial interaction with the public and co-workers" precludes her from performing the job of surveillance system monitor. (D.I. 13 at 9–10)  However, the surveillance system monitor position requirements do not conflict with Neeley's RFC, because little involvement with people is required. *See Baker v. Colvin*, 2015 WL 5775227, at *3 (N.D. Ok. Sept. 29, 2015) ("A 'people rating' of 6 for surveillance monitor indicates this job has little involvement with people."); *Duncan v. Colvin*, 2014 WL 2004386, at *6 (N.D. Ok. May 16, 2014), *aff'd*, 608 Fed. Appx. 566 (10th Cir. 2015) (same); DOT, App. B– Explanation of Data, People, & Things, 1991 WL 688701 (explaining that the numbering denotes, from highest (0) to lowest (8), the job's involvement with people).  Moreover, the description of surveillance system monitor does not suggest significant interaction with people:

> Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action: observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions.

DOT 379.367-010.  There is nothing in the job description exceeding the RFC limitation of superficial interaction with the public and co-workers. *See Baker*, at *2–3.  Therefore, there is not a conflict between the VE's testimony and the information provided in the DOT, as to Neeley's ability to interact with others.  Thus, substantial evidence supports the ALJ's findings, and, therefore, remand is not recommended on this point.

## B. Call Out Operator

### a. Reasoning Level Conflict

Neeley argues her limitation to "simple, routine, and repetitive tasks" prevents her from performing the occupation of call out operator. (D.I. 13 at 6–9)  A call out operator is classified by the DOT as a reasoning level 3 position. DOT 237.367-014.

Like the surveillance system monitor position, the ALJ did not resolve conflicts between the information in the DOT and the VE's testimony.  The ALJ asked the VE if her testimony was consistent with the information contained in the DOT, but did not inquire further when the VE did not resolve the conflict between Neeley's restrictions, and the reasoning level of 3 required for the call out operator position. (Tr. at 411)  As such, the ALJ did not obtain "a reasonable explanation" for the conflict as required by SSA policy. SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).  Therefore, the court recommends that remand is proper to resolve the conflict between Neeley's RFC limitation, and the level 3 reasoning requirements for the call out operator position. *See* § (B)(1)(A)(a), *supra*.

### b. Reaching Conflict

Neeley argues she is precluded from performing the job of call out operator, because she must avoid constant reaching, and avoid overhead work activity with the left upper extremity. (D.I. 13 at 9)  The position of call out operator involves "occasional" reaching. DOT 237.367-014.  The restriction of "constant" reaching does not preclude Neeley from performing "occasional" reaching.[3]  Therefore, there is not a conflict between the VE's testimony and the

---

[3] Neeley argues the ALJ precluded "any reaching activity with the left upper extremity." (D.I. 13 at 9)  This is incorrect. The ALJ stated that Neeley must "avoid constant...reaching" and "avoid *overhead work* activity with her left upper extremity." (Tr. at 380) (emphasis added)

information provided in the DOT, as to Neeley's reaching capabilities. Thus, substantial evidence supports the ALJ's findings, and, therefore, remand is not recommended on this point.

### c. Interacting with Others Conflict

Neeley argues her limitation to "occasional brief superficial interaction with the public and co-workers" precludes her from performing the job of call out operator. (D.I. 13 at 9–10) During the hearing, Neeley's attorney asked the VE a follow up question concerning the level of interaction required of a call out operator. (Tr. at 412) Neeley's attorney inquired whether the job requirements would conflict with Neeley's RFC. (*Id.*) The VE explained that the position of call out operator involves compiling credit card information and telephoning subscribers. (*Id.*) The VE further explained the position does not involve directly interacting with the public. (*Id.*) Neeley's attorney asked whether the position would be an isolated job, and the VE confirmed that it would be. (*Id.*)

As such, the VE provided further evidence explaining why Neeley's social limitations would not preclude her from the position of call out operator. The questions and answers exchanged between Neeley's attorney and the VE resolved any potential conflicts that may have existed. Thus, substantial evidence supports the ALJ's findings, and, therefore, remand is not recommended on this point.

### C. Addressing Clerk

### a. Reasoning Level Conflict

Neeley argues her limitation to "simple, routine, and repetitive tasks" prevents her from performing the occupation of addressing clerk. (D.I. 13 at 6–9) An addressing clerk is classified by the DOT as a reasoning level 2 position. DOT 209.587-010.

The Third Circuit recognizes that a level 2 reasoning occupation is consistent with "simple, routine, and repetitive work." *Money v. Barnhart*, 91 F. App'x 210, 214–215 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive."). Therefore, Neeley's limitation to "simple, routine, and repetitive tasks" does not preclude her from performing the position of addressing clerk. Thus, substantial evidence supports the ALJ's findings, and, therefore, remand is not recommended on this point.

### b. Reaching Conflict

Neeley argues she is precluded from performing the job of addressing clerk, because she must avoid constant reaching, and avoid overhead work activity with the left upper extremity. (D.I. 13 at 9) The position of addressing clerk involves "frequent" reaching. DOT 209.587-010. The DOT description states an addressing clerk:

> Addresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail.

*Id.* The primary task of addressing and sorting mail involves frequent reaching and hand movement. *See id.*

The ALJ, however, did not elicit any evidence from the VE as to whether the position of addressing clerk involves overhead work activity with the non-dominant extremity. The ALJ also did not explain her reasoning as to Neeley being able to perform "frequent" reaching given Neeley's RFC limitations. As such, unresolved conflicts remain between the information in the DOT and Neeley's physical abilities as determined by her RFC.[4] Therefore, remand is recommended.

---

[4] The Commissioner does not discuss the reaching conflict for the position of addressing clerk. (*See* D.I. 15 at 14–15)

### c. Interacting with Others Conflict

Neeley does not argue there is a conflict with regard to interacting with others. (D.I. 13 at 9–10)

## V. CONCLUSION

For the foregoing reasons, the court recommends granting-in-part and denying-in-part Neeley's motion for summary judgment (D.I. 12), and granting-in-part and denying-in-part the Commissioner's cross-motion for summary judgment (D.I. 14). Additionally, it is recommended that the court deny Neeley's demand for an award of benefits. The court further recommends the case be remanded to the Commissioner with instructions to:

1) Identify and resolve any conflicts between the occupational evidence provided by the VE and information in the DOT regarding:

    a. Whether the reasoning level 3 jobs listed by the VE are representative examples or an exhaustive list of jobs the claimant is capable of performing;

    b. The reasoning level 3 requirement for the position of surveillance system monitor and Neeley's RFC;

    c. The reasoning level 3 requirement for the position of call out operator and Neeley's RFC; and

    d. The frequent reaching requirements for the position of addressing clerk, with the ALJ's finding that Neeley should avoid constant reaching, and avoid overhead work activity with her left upper extremity.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right

to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1

(3d Cir. 2006*); Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: August 25 , 2017

Sherry R. Fallon
United States Magistrate Judge